No.12568

IN THE SUPREME COURT OF THE STATE OF MONTANA

1974

---

B & L PAINTING COMPANY, INC.,

Plaintiff

-vs-

UNITED PACIFIC INSURANCE COMPANY & E. L. MATELICH CONSTRUCTION
COMPANY,

Defendants and Respondents,

-vs-

BOARD OF TRUSTEES OF KALISPELL HIGH SCHOOL DISTRICT #5 and
KALISPELL HIGH SCHOOL DISTRICT OF FLATHEAD COUNTY, MONTANA
and ARTHUR B. HARKER, d/b/a OLE'S PLUMBING AND HEATING,

Third Party Defendants and Appellants.

---

Appeal from:   District Court of the Eleventh Judicial District,
               Honorable Robert C. Sykes, Judge presiding.

Counsel of Record:

    For Appellants:

        M. Dean Jellison, argued, Kalispell, Montana
        Rognlien, Hash, Jellison & O'Brien, Kalispell, Montana

    For Respondents:

        C. Eugene Phillips, argued, Kalispell, Montana
        Murphy, Robinson, Heckathorn & Phillips, Kalispell,
        Montana

---

Submitted:   September 12, 1974

Decided: OCT 2 9 1974

Filed: OCT 2 9 1974

*Thomas J. Kearney*
                                    Clerk

Chief Justice James T. Harrison delivered the Opinion of the Court.

On May 1, 1967 appellant Board of Trustees of Kalispell High School District No. 5 (the Board) awarded contracts for construction of the new Kalispell Junior High School to respondent E. F. Matelich Construction Company (Matelich) as general contractor; Ole's Plumbing & Heating (Ole's) as mechanical contractor; and Palmquist Electric as electrical contractor. Each of these contractors acted as a "prime contractor" sharing the responsibility for construction; none was a subcontractor of any other. On May 8, 1967 a notice to proceed was issued making specific reference to the 580 calendar day completion schedule specified in the contract, indicating completion by December 10, 1968.

The contract provided for extensions of time for strikes and during the project all contractors were granted 51 days delay from this cause. Additional extensions were granted until the completion date became April 7, 1969 for all the contractors.

On April 7, 1969 a change order was executed by Matelich and the Board which provided, among other things, that the completion date be extended to July 1, 1969 and the contract's liquidated damages provision be changed from $50 per day to $500 per day. On the same day a change order was also executed by Ole's and the Board which likewise provided for the extension of the completion date to July 1, 1969, but with no increase whatsoever in the liquidated damages to be assessed after that date.

On August 31, 1969 the architect issued a certificate of substantial completion. Matelich was paid the contract price less $30,500 withheld as liquidated damages for the 61 day delay from July 1 to August 31, 1969. $3,050 (61 times $50) was to be withheld from the money due Ole's.

Plaintiff B & L Painting Company, Inc., on October 30, 1969 filed a complaint alleging that it was a subcontractor of Matelich on the Kalispell Junior High School project and was entitled to

- 2 -

payment of $8,067.75 on its subcontract. United Pacific Insurance Company, surety for Matelich, was also named as a defendant.

Matelich filed a third party complaint alleging the Board was indebted to it on its contract in the amount of $30,500, which was improperly withheld as liquidated damages.

The district court ordered the issues between B & L Painting and Matelich be separated from the issues between Matelich and the Board. The instant appeal therefore only involves Matelich and the Board.

The Board answered that the project was completed 61 days late; that a change order to the contract extending the time of completion also provided for liquidated damages of $500 per day for delay in completion; and that it was entitled to deduct $30,500 from the contract price as an offset.

Matelich moved for summary judgment and for an order limiting liquidated damages to $50 per day. The district court denied summary judgment, but granted the order limiting damages to $50 per day. In the court's memorandum in support of its order two of the reasons given were (1) that the change order extending time and increasing liquidated damages was invalid because no notice of the changes was given to any subcontractor or surety, and therefore, the completion date was April 7, 1969 and the original $50 per day liquidated damages provision was applicable; and (2) that the Board contracted with Matelich as one of three "prime" contractors, and since delays might be occasioned by any of the three, the increase in liquidated damages should be affected only upon a detailed and interrelated basis.

On this appeal the Board contends that all the provisions of the April 7, 1969 change order between it and Matelich should be allowed to stand. Matelich insists that not only should the liquidated damages be limited to $50 per day, but they should be figured using July 1, 1969 as the scheduled completion date.

On appeal these questions are posed: (1) Is the increase in liquidated damages from $50 to $500 per day enforceable against only one of three "prime" contractors, when all three had contract obligations which were interrelated and independent? (2) Would a finding that the increase in liquidated damages is unenforceable necessarily invalidate the accompanying April 7 to July 1, 1969 time extension?

We have intentionally bypassed the the issues of whether the increase in liquidated damages constitutes an unenforceable penalty, or whether it is unenforceable for want of notice to subcontractors and sureties, since the peculiar circumstances of this case make the increase unenforceable in any event.

Counsel agree that no precedent has been found, but it is our opinion that the district court has set forth what appears to be the only practicable and just rule. That is-- where several separate and distinct construction contracts are executed, and delays may be caused by any one of the contractors, the interdependency of the contractors must be considered in ascertaining liquidated damages. For example: one of the problems here is that Matelich attributed at least part of the delay to Ole's. Yet the inequitable result was that the Board offset $500 per day against the money due Matelich, but only one-tenth of this amount or $50 per day against Ole's. The only party having any real control over the damages to be charged against all three of the "prime" contractors was the Board. To permit a party in the Board's position to avoid considering possible delays by any one of these contractors or their subcontractors will inevitably lead to a situation needlessly complicated by counterclaims. This Court is not about to condone such a policy.

The time extension to July 1, 1969 is another matter. The district court reasoned that since the liquidated damages provision of the April 7, 1969 change order between Matelich and the Board was void, so was the time extension. As an element of logic this conclusion sounds appealing, but it is not consistent with the rule

- 4 -

discussed heretofore concerning liquidated damages in that it neglects to take into account the interdependency of the three "prime" contractors. Thus, Matelich is required to finish by April 7, 1969 or pay damages, despite being dependent in some measure upon Ole's who by virtue of its own change order had until July 1, 1969 to complete the mechanical work. What difference does it make whether Matelich is held to a greater amount of liquidated damages or an earlier scheduled completion date? Either way the same potential result obtains: Matelich loses money because of the actions of another party over whom he has no control. If anything, the July 1 completion date given Ole's practically guaranteed that Matelich would not finish the general construction work by April 7.

The Board is estopped from denying that Matelich had until July 1, 1969 to complete its portion of the project. First, it is important to note the limiting terms of the contract between Matelich and the Board insofar as time of completion and liquidated damages are concerned:

> "19. * * *
> "It is further agreed that time is of the essence of each and every portion of this contract and of the specifications wherein a definite and certain length of time is fixed for the performance of any act whatsoever; and where under the contract an additional time is allowed for the completion of any work, the new time limit fixed by such extension shall be the essence of this contract. Provided, that the contractor shall not be charged with liquidated damages or any excess cost when the delay in the completion of the work is due: * * * (b) to unforeseeable cause beyond the control and without the fault or negligence of the contractor, including, but not restricted to, acts of God, or of public enemy, <u>acts of the owner, acts of another contractor in the performance of a contract with the owner * * *"</u>. (Emphasis added).

Certainly "acts of the owner" and "acts of another contractor in the performance of a contract with the owner" include the making of an agreement allowing the other contractor, who is under no duty to Matelich, additional time to finish. How can the Board now be heard to complain that Matelich failed to finish by April 7, 1969, when it gave Ole's--upon whom Matelich was partly dependent-- until July 1, 1969?

- 5 -

Second, the record shows that at various times during the period from December 1968 to May 1969 the Board proceeded to move furniture, equipment, and supplies into the new school building. Gregory Matelich testified that Matelich cooperated in this venture prior to being completely out of the building in order that there would not be any difficulty in starting the coming school term.  Having the school people under foot surely was more hindrance than help in getting the job done by April 7;  it thus hardly seems fair to penalize Matelich for failure to do so.

Finally, the record also shows    in August 1969 Matelich twice cleaned the entire school building in preparation for an "open house".  This tends to indicate Matelich was thinking of the July 1, not April 7, completion date.  Going to such trouble and expense is strange behavior indeed for a party if it realized it was already four months tardy in its obligations.

The judgment of the district court is modified to the extent that Matelich should be assessed liquidated damages in the amount of $50 per day only after July 1, 1969.

———————————————————————————————
Chief Justice

We concur:

John Conway Harrison

———————————————————————————————

———————————————————————————————
Justices.